[Civ. No. 4125.  Third Appellate District.—June 28, 1930.]

FRATERS GLASS AND PAINT COMPANY (a Corporation) et al., Respondents, v. SOUTHWESTERN CONSTRUCTION COMPANY (a Corporation) et al., Defendants; HENRY S. PATTEN et al., Appellants.

Dana R. Weller for Appellants.

G. C. De Garmo and H. B. Cornell for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment against the sureties on an indemnity bond which was given pursuant to section 1183 of the Code of Civil Procedure, to secure the payment of the contract price of material furnished to the contractor in the construction of a building at Los Angeles.

The appellants claim they were released from the obligations of the undertaking to the extent of $4,000, on account of a mistake on their part with respect to the terms of the bond, which mistake, they allege, was known to the respondents. A reformation of the instrument is sought pursuant to the provisions of section 3399 of the Civil Code.

A former trial of this cause resulted in a judgment for these appellants, which was reversed upon appeal for the erroneous admission of parol evidence regarding an alleged

former oral agreement which is in conflict with the terms of the undertaking. (*Fraters G. and P. Co.* v. *Southwestern C. Co.*, 200 Cal. 688 [254 Pac. 1097].) The facts appear in greater detail in the opinion of the court which was rendered on that appeal.

Upon the present retrial of the case, by leave of court, the answer was amended to affirmatively allege that appellants executed the bond through a mistake on their part which mistake was known to the respondents; that it was previously agreed the appellants should be released from the obligations of the bond to the extent of $4,000; that *"pursuant to said agreement* said plaintiff prepared and delivered to these defendants an agreement in the words and figures following, to wit:

" 'April 26, 1921.

" 'Mr. Henry Patten,
" 'Patten & Davies Lumber Co.,
" 'Los Angeles, California.

" 'Dear Sir: In connection with the contract between the Southwestern Construction Company and E. B. Rivirs, for a building at Seventh and Central, we agree to furnish glass as arranged with Harry E. Martin, to cost approximately $4,000, and to wait thirty-five days after completion of said building for payment of same, waiving our lien rights.

" 'We are doing this, of course, to help Mr. Martin in this deal and are confident that it will be carried to a successful completion.

" 'Very truly yours,
" 'FRATERS GLASS & PAINT Co.,
" 'By J. A. FRATERS, Pres.' "

There is no controversy over any feature of the transaction except the alleged omission to include within the terms of the undertaking the asserted exemption of the sureties from liability to the extent of $4,000. The appellant, Henry Patten, testified that prior to the execution of the bond he had a conversation with Mr. Fraters, the president of the Art Glass Company, during which it was agreed that if the appellants would sign the bond they would be released from liability thereon to the extent of $4,000; that as he was about to leave the office where this conference occurred, he said to Mr. Fraters, "I believe you had better send me

a letter over here, relating the substance of this, so that I will have it in my file." "Mr. Martin [the contractor], I believe, brought back the letter about 12 o'clock that day. . . . It is my recollection I read the letter. . . . Q. When it was brought back, did you examine it? A. I read it, yes." This testimony refers to the letter above quoted. No other written communication passed between them. It will be observed that in both the answer and the testimony above related, the appellants rely on their assumption that it was the intention of the parties as expressed in the letter, to relieve them of liability under the bond to the extent of $4,000, and that they subsequently signed the bond through mistake believing that this limitation of liability was included in the undertaking.

Section 3399 of the Civil Code provides: "When, through fraud or mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . . "

The appellants do not ask to revise the letter on the theory that it does not conform to the previous oral agreement. Nor is it contended the letter was written at the same time and as a part of the undertaking. The uncontradicted evidence refutes this theory. ■ It then becomes a question as to whether the letter is susceptible of the construction placed upon it by the appellants. We think the language of the letter, which the appellants without objection accepted and read as a written declaration of the previous oral agreement, is too clear and unequivocal to bear the construction contended for by the appellants. It seems unreasonable and absurd to hold that the language, "we agree to furnish glass . . . to cost approximately $4,000.00, and to wait thirty-five days after completion of said building for payment of same, waiving our lien rights," may be construed to mean the sureties on the bond which was given to secure the payment for the glass, would be exempt from liability thereon to the extent of $4,000. This would practically render the bond valueless. From the very letter upon which the appellants rely, it appears the respondents expected to furnish glass at an entire cost of only about $4,000. To require a bond for this purpose and

then relieve the sureties of the full amount of the liability would be a futile act. Clearly this letter concedes but two things, first, an agreement to delay the payment of the obligation thirty-five days from the completion of the building, and, secondly, to waive the lien as security for the payment. This letter is unambiguous and clear as to its meaning. The Supreme Court so held in its opinion on the former appeal in this case.

The appellants, however, contend that since the respondents failed to take the witness-stand at the trial and deny the alleged agreement that the bondsmen were to be released to the extent of $4,000, it must be assumed that covenant was made and that the appellants inadvertently signed the bond by mistake which error on their part was known to the respondents. An oral contradiction at the trial of this alleged agreement for a limitation of liability could add nothing to the written declarations contained in the letter, and was, therefore, unnecessary. According to the allegations of the appellants' answer, the letter was requested and accepted as a written assertion of the previous oral agreement. The letter is set out in the answer and is relied upon by the appellants. The letter constituted the respondents' written denial that there was an agreement to limit the liability of the bondsmen. It was an affirmative statement of the precise terms of the previous oral agreement. In effect this constitutes a denial that any other conflicting terms were agreed upon.

No evidence was adduced to the effect that the respondents "knew or suspected" the bond did not "truly express the intention of the parties." The appellants assert that this knowledge will be presumed from the fact that the undertaking did not contain the agreed reservation. The letter also refutes the assumption that the respondents knew the bond did not truly express the intention of the parties.

The burden is on one who relies upon fraud or mistake as grounds for the rescission or revision of an instrument to allege and prove the essential elements of the charge. (12 R. C. L. 424, sec. 172; *Burt* v. *Los Angeles Olive Growers' Assn.*, 175 Cal. 668 [166 Pac. 993].)

Courts of equity will not encourage the cancellation or revision of instruments on the ground of mistake where they appear to have been executed by the complainant with-

out the exercise of reasonable care. (9 C. J. 1169, sec. 21; *Grymes* v. *Sanders,* 93 U. S. 55 [23 L. Ed. 798, see, also, Rose's U. S. Notes] ; 4 R. C. L. 507, sec. 20.) In the last-cited authority it is said:

"The authorities are practically unanimous in holding that the mistake must not result from the want of that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances, or equity will not relieve against it."

It may not be reasonably said the language of the letter to the effect that payment for the claim might be delayed or that the lien was waived, would justify the conclusion that it was thereby meant the sureties were to be relieved from liability to the extent of $4,000, or that this language would furnish ground for revision on account of a mistake of law as to the legal extent of the bondsmen's liability. To relieve one from obligations resulting from the signing of an instrument, on the ground of mistake, the error must be real and vital and not merely fanciful, unreasonable or the result of negligently failing to read the document.

In the present case it is not claimed there was a confidential relationship existing between the parties. Nor is it claimed the appellants were unable to read and understand the English language. At their request they were given a written statement of the concessions which were agreed upon by the respondents. This letter was read and retained by the appellants. Its terms were never criticised or objected to. Subsequently they solemnly executed the bond without objecting to its clear and unambiguous terms. There are no circumstances in this case to indicate that the appellants were misled or deceived as to the terms of this bond. In the absence of fraud, confidential relations or circumstances indicating excusable mistake, one will be presumed to know the meaning of unambiguous language and will be bound by the solemn execution of a written instrument. (*Hawkins* v. *Hawkins,* 50 Cal. 558; *Burt* v. *Los Angeles Olive Growers' Assn.,* 175 Cal. 668, 675 [166 Pac. 993] ; *Metropolitan Loan Assn.* v. *Esche,* 75 Cal. 513 [17 Pac. 675] ; *Pope* v. *Armsby Co.,* 111 Cal. 159 [43 Pac. 589].) The obligation created by the execution of the bond is clearly enforceable in spite of the fact that the claim of lien was specifically waived.

The findings of the court to the effect that the liability of the bondsmen was not waived or limited and that the undertaking was not executed through mistake on the part of the appellants, is amply supported by the evidence.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 28, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 25, 1930.