[Civ. No. 4397.   Fourth Dist.   Feb. 26, 1953.]

THOMAS E. SHIELDS, etc., Appellant, v. JOHN T. SHOAFF, Respondent.

Robert Loundagin for Appellant.

Deadrich, Gill & Bates and S. B. Gill for Respondent.

GRIFFIN, J.—Plaintiff and appellant Thomas E. Shields, doing business as Inyo-Mono Collection Service, brought this action on a promissory note for $2,735.58, signed by defendant and respondent John T. Shoaff. It was made payable to John L. Surber Company. It was assigned to plaintiff and was the final payment on a construction contract entered into between Surber and defendant on January 1, 1949. On August 10, 1950, there was a balance of $1,483.30, plus interest due, which defendant refused to pay.

Plaintiff alleged that at the time of the execution of the contract and performance of the work the Surber Company was a licensed general contractor. Defendant denied this allegation and affirmatively alleged in his answer that the

company did not have a valid contractor's license and accordingly plaintiff, as assignee, was not entitled to recover by reason of that fact, citing sections 7031, 7080, and 7068 of the Business and Professions Code; *Loving & Evans* v. *Blick*, 33 Cal.2d 603 [204 P.2d 23] ; and *Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628 [204 P.2d 37]. After trial, the court so found and entered judgment for defendant. Plaintiff appealed.

The certificate of the Contractors' State License Board dated October 11, 1951, which was received in evidence, shows:

"That John L. Surber Co., . . . John L. Surber, individual owner and Edward J. Rabensberg, Responsible Managing Employee, was issued Contractor's License No. 89499, classification B-1 (General Building Contractor) on September 24, 1946, and this license was renewed to June 30, 1947; however, said license was ipso facto suspended April 25, 1947, for failure of the licensee to notify this Board within 10 days of the disassociation of Mr. Edward J. Rabensberg, Responsible Managing Employee for John L. Surber Co.

"That no replacement of the Responsible Managing Employee was made within a period of one year and Contractor's license No. 89499 was ipso facto revoked April 25, 1948, and no application has been filed for a new license."

Surber testified that there was issued to the company a general contractor's license in the year 1946, and that the company held such a license continuously from that date until the time of trial of this action; and that it had not been revoked or suspended to his knowledge. The original license was presented to the court for examination and it bore the notation: "9/24/46" and "For the years 1950 and 1951 and 1952. B-1 S.C. 10. #89499." Surber also testified that the work done was for remodeling a café for defendant in December, 1948, and January, 1949; that when he obtained the contractor's license, Rabensberg was his responsible managing employee; that Rabensberg left the employ of the company about April, 1947; that he did not notify the board of this fact; that therefore he had no such employee licensed by the state board in his employ; that about December, 1948, Shoaff told him what he wanted done in connection with the work performed.

An agent of the licensing board wrote Mr. Surber a letter in March, 1951, notifying him of the *ipso facto* suspension of his general contractor's license as of April 25, 1947, and

stated that if his B-1 (general license) had been renewed without revealing the true facts in this respect, any fees tendered for such renewal would be refunded.

The evidence indicates that one Fox and one Dillon, who had some business arrangements with Surber, and who officed with him, made a deal with Shoaff, agreeing to remodel Shoaff's café on a plus 10 per cent cost basis; that the estimated cost was $2,000; that Fox had no contractor's license at the time; that he saw Surber's general contractor's license in his office; that he and Dillon made the financial arrangements with Shoaff; that Fox brought Surber into the transaction and he agreed to do the work with his equipment and men; that Fox acted as general overseer of the work and that Dillon assisted; that they were paid by drawing account on Surber; that Shoaff contracted for an additional room and other extras not mentioned in the original agreement; that the work was done and materials furnished and Surber was on the job most of the time; that although Fox was, long after the completion of the work, licensed as a general contractor, he had no such license at the time, and no responsible licensed employee was on the job during that period; that progress payments were made to Dillon; that when the building operations were completed the bill amounted to a sum in excess of $4,000 and Shoaff later complained about it as being too high; that Shoaff nevertheless made out the note to Surber because he was a licensed contractor; that Dillon told Shoaff he "could pay it the best way" he could or whatever he could afford.

██ Surber had no individual license as a general contractor. The company's license was predicated upon a responsible managing employee qualifying. The evidence clearly shows that Rabensberg left the employ of Surber in 1947. Plaintiff offered no evidence that Surber did or did not notify the licensing registrar within ten days of this fact, as required by section 7068, *supra*. That section provides that if such notice is not given the license "shall be *ipso facto* suspended" and may be reinstated by a showing that another qualified employee has replaced the former one; and that if such notice is given the license shall remain in force for a reasonable length of time, according to the rules of the board.

To avoid the consequences of the provisions of the sections noted, plaintiff argues that there was no evidence to show that Surber did not notify the registrar of the disassociation of his responsible managing employee and that the

burden of proof of that fact rested upon the defendant. We see no merit to this argument. Before plaintiff was entitled to recover, it was necessary for him to allege and prove that the contractor had a valid contractor's license during the performance of the contract. (§ 7031, *supra*.) The certificate of the registrar indicates that he did not have such a valid license at the time the work was performed. It also recites that the license was *ipso facto suspended* April 25, 1947, for failure of the licensee to notify the board. The fact that the employee did disassociate himself with the company is not in dispute. Apparently no notice of this fact was given by Surber until Feb. 22, 1951. No other employee was employed and qualified. These facts were known to Surber. He was presumed to know the law which, based on these known facts, *ipso facto* suspended the license. (§ 7068, *supra*.) It was never reinstated thereafter by Surber or any employee qualifying by an examination. .

The only possible tenable claim plaintiff could make in this respect is that the original license issued was reinstated by the board by the acceptance of an annual license fee and the placing on the license of the notations indicated. At most, this only indicates that for the years 1950, 1951 and 1952, the license fee had been paid. The certificate of the registrar shows that the license, *ipso facto*, was *revoked* April 25, 1948, and no application was filed for a new one. Since the work here involved was performed in the year 1949, any claimed renewal by the mere payment of the annual license fee, without disclosing the true facts, would be ineffective. It may be further noted that the renewal date indicated on the license was subsequent to the time the work was performed. It therefore would not be sufficient to authorize a recovery for work performed in 1949.

We conclude that the trial court properly found, from the evidence, that plaintiff assignee, not being a holder in due course, could not recover because the plaintiff's assignor did not, at the time of the performance of the contract, possess a valid general contractor's license as required by law. (Civ. Code, § 3133, *Appel* v. *Morford*, 62 Cal.App.2d 36 [144 P.2d 95].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.