[Civ. No. 18563.   First Dist., Div. Two.   Apr. 20, 1960.]

PETALUMA BUILDING MATERIALS, INC. (a Corporation), Respondent, v. FOREMOST PROPERTIES, INC. (a Corporation) et al., Appellants.

Burnstein & Michaels, Robert C. Burnstein, Jess Abramovitz and Carl M. Selinger for Appellants.

Jack Ryersen for Respondent.

DOOLING, J.—Petaluma Building Materials, Inc., sued Foremost Properties, Inc., and Pacific Queen Investment Company for $3,936.21, which plaintiff alleged to be the unpaid balance due and owing on a $7,886.21 contract according to the terms of which plaintiff had furnished defendants with materials used in the erection of a work of improvement on real property. Plaintiff further alleged the filing of a claim of lien against said real property and prayed that the above sum be adjudged a lien thereon. Defendants Foremost Prop-

erties, Inc., and Pacific Queen Investment Company answered, admitting their ownership of said property, but alleging payment in full for all materials furnished by plaintiff to their contractor in connection with said property. The court made findings of fact and conclusions of law in accordance with which it ordered that plaintiff have a lien upon said property for the sum of $3,939.51 plus costs with interest, and that the property, or so much thereof as might be necessary, be sold for payment thereof. From this judgment defendants appeal.

On May 22, 1956, Wallock and Bakar, a general contracting firm, entered into a $17,400 contract with Lawrence K. Dayton, doing business as United Painting Company, for the painting and finishing of an apartment house on appellants' real property. Between June 29 and July 30, 1956, respondent, a building materials dealer, furnished Dayton with $7,886.21 worth of materials which the latter used in connection with this contract.

On June 29, 1956, Wallock and Bakar issued a check in the amount of $3,000, payable jointly to respondent and Dayton. Vern H. Miller, respondent's agent, testified that on July 2 he had talked by telephone with an unidentified person at Wallock and Bakar, and that during this conversation it had been agreed that if respondent endorsed said check over to Dayton, Wallock and Bakar would make respondent and Dayton copayees on all subsequent checks under this contract.

On the same day respondent did in fact endorse the $3,000 check over to Dayton and did likewise with a similar check dated August 1, 1956, in the amount of $3,500. In addition to these, respondent received two other checks totaling $3,950 from Wallock and Bakar, made out to respondent and Dayton jointly, which it credited to its account. Respondent received no other payment for the aforementioned materials.

Beginning on August 1, 1956, Wallock and Bakar issued additional checks totaling at least $7,974 pursuant to the contract on which respondent was not included as a payee.

Dayton disappeared at or near the time of the contract's completion. Neither he nor Wallock and Bakar were licensed contractors.

The court found that plaintiff and defendants, the latter acting by their agent, Wallock and Bakar, had entered into an oral agreement whereby plaintiff would endorse over and release to Dayton the said $3,000 check in consideration for

defendants' promise to make all future checks on the $17,400 contract payable to plaintiff and Dayton jointly.

We must agree with appellants that but for the finding that appellants had promised to issue all future checks to respondent and Dayton and that respondent in reliance upon this promise had delivered the first two checks to Dayton, the delivery of the checks made payable to respondent and Dayton would have operated as a payment to respondent and would have discharged the debt to it. (*Westwood Bldg. Materials Co.* v. *Valdez,* 158 Cal.App.2d 107 [322 P.2d 79].)

However the question of whether a check is received in payment of a debt is one of fact depending on the intention of the parties, and here under the findings of the court the appellants not only were put on notice that respondent was not applying the check to the payment of its claim but expressly agreed by virtue of that fact to make all future checks payable to respondent and Dayton.

The witness Miller, who represented respondent, testified that on July 2, 1956, he telephoned to the office of Wallock and Bakar and was told by the woman answering the telephone that Mr. Bakar was not in. The woman asked him if he would speak to anyone else "and at the time I said if there was someone else there that had authority to make financial decisions I would talk to them, and she said the party on the other side had authority." His testimony continued:

"Q. And then when you talked to this person on the telephone what was the conversation?

"A. I told him we had a check of his made out to Petaluma Building Materials and United Painting, and we wanted to sign it over to United Painting to help him in his operating expense, and the answer was it was our office, we could do whatever we wanted, which I agreed with him, but said that we would want his assurance that he would have the rest of the checks made payable to both.

"Q. And what did the person answer? A. That you can be assured that would be done."

This evidence was introduced without objection. Appellants attempt to urge upon appeal that such evidence is outside the issues made by the pleadings, and in any event is not sufficient to support the finding of the court. By failing to object on the ground of variance appellants have waived their objection that the evidence was outside the issues. (*Colbert* v. *Colbert,* 28 Cal.2d 276, 281 [169 P.2d 663]; *Peck* v. *Noee,* 154 Cal. 351, 354 [97 P. 865]; 39 Cal.Jur.2d, Pleading,

§ 343, p. 468.) ▮ The evidence above quoted is sufficient to support the finding that appellants promised to make all future checks to respondent and Dayton jointly. ▮ This evidence might have been subject to objection on one or several grounds, but having been admitted without objection even if incompetent it is sufficient to support a finding. (*Allen* v. *Los Angeles County District Council of Carpenters,* 51 Cal.2d 805, 811 [337 P.2d 457]; *Estate of Kay,* 30 Cal.2d 215, 224 [181 P.2d 1]; *Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511, 518 [55 P.2d 859]; *Powers* v. *Board of Public Works,* 216 Cal. 546, 552 [15 P.2d 156].) ▮ The uncertainty in this evidence as to the identity of the man to whom Miller spoke over the telephone is clarified by the testimony of Wallock that in July, 1956, Bakar, Wallock and one woman employee were the only three who had access to the office to which the telephone call was placed. From this the court could reasonably draw the inference that Wallock must have been the person with whom Miller had this conversation.

▮ Appellants further argue that even if this finding is supported the action was on a new contract to issue all future checks to both respondent and Dayton and therefore could not be the basis of a mechanic's lien. The answer is that the action is on the original obligation to pay for the materials furnished to Dayton by respondent and used by Dayton in his work on appellants' property. The finding of the promise to make all future checks payable to both is important as showing that appellants understood that the earlier checks might not be applied to respondent's claim for materials and acquiesced; i.e., that appellants understood that they would not constitute a partial payment to respondent and agreed thereto.

Finally appellants argue that since Dayton was not licensed as a contractor respondent which claims "through" Dayton cannot recover. Appellants' citations in support of this argument (*Shields* v. *Shoaff,* 116 Cal.App.2d 306 [253 P.2d 1002]; *Appel* v. *Morford,* 62 Cal.App.2d 36 [144 P.2d 95]; *Holm* v. *Bramwell,* 20 Cal.App.2d 332 [67 P.2d 114]) are not in point. In each the plaintiff was attempting as assignee or subrogee to enforce an obligation to the unlicensed contractor, i.e., stood in the unlicensed contractor's shoes. ▮ But a materialman's lien is a "direct lien" (Code Civ. Proc.,§ 1185.1, subd.(a)) created by Constitution and statute (*Los Angeles etc. Brick Co.* v. *Los Angeles etc. Dev. Co.,* 7 Cal.App. 460, 461 [94 P. 775]). To establish the lien the materials must

be furnished "at the instance of the owner or of any [some] person acting by his authority or under him, as contractor or otherwise" (Code Civ. Proc., § 1181) and a subcontractor is specifically declared to be the agent of the owner for such purpose (Code Civ. Proc., § 1182, subd. (c)). That Dayton was a subcontractor is admitted as is the fact that respondent furnished the materials at his request. ▮ Our Supreme Court has said that a materialman is one of the class to be protected by the requirement that a contractor must have a license and is therefore not *in pari delicto* with the unlicensed contractor. (*Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141, 153 [308 P.2d 713] ; *Fraenkel* v. *Bank of America*, 40 Cal.2d 845, 848 [256 P.2d 569].) Not being *in pari delicto* he is not barred from enforcing his lien because the owner's agent with whom he dealt is an unlicensed contractor. The court made this clear in Lewis and Queen, *supra*, 48 Cal.2d page 153 in the following language: "The class protected by the statute includes those who deal with a person required by the statute to have a license. When the person required to have a license is a general contractor, then the protected class includes subcontractors, *materialmen*, employees, and owners dealing with the general contractor." (Emphasis ours.) Where the person required to have a license is a subcontractor it is equally clear that a materialman dealing with him is in the protected class.

Since none of the points presented by appellants justifies a reversal the judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 14, 1960. Dooling, J., did not participate therein.