[Civ. No. 28342. First Dist., Div. One. Dec. 8, 1970.]

DAVID C. WALKER, Plaintiff and Appellant, v.
GEORGE NITZBERG, Defendant and Respondent.

## COUNSEL

Hawkins & Hawkins, Herbert G. Hawkins and Louis F. Hawkins for Plaintiff and Appellant.

Carrow & Jones and David Price Jones for Defendant and Respondent.

## OPINION

**MOLINARI, P. J.**—This case was transferred to this court upon certification from the Appellate Department of the Superior Court of the County of Sonoma on an appeal to that court from a judgment of the municipal court.

On March 6, 1964, Patrick McCaslin contracted with George Nitzberg to perform sheetrock and plastering work on Nitzberg's home for the sum of $1,385. About five days after the contract was executed McCaslin assigned his rights under the contract to David C. Walker to whom McCaslin was indebted upon an open book account in excess of $21,000.[1] Walker

---

[1] The assignment read as follows:

"ASSIGNMENT

"FOR VALUE RECEIVED, Patrick McCaslin, doing business as Mac's Drywall, hereby assigns and transfers to David G. [*sic*] Walker, for collection, all sums due or to become due Patrick McCaslin under his contract with George Nitzberg, 291 Palm, Petaluma, Calif. for drywall construction and related services performed in that work or works of improvement described or located as follows:

Palm Lane
Petaluma, Calif.

Dated: 3-10-64

s/ Patrick McCaslin"

gave Nitzberg notice of the assignment.[2] Several days thereafter McCaslin prevailed upon Mrs. Nitzberg to pay him $807.60 of the contract price. Thereafter Walker instituted the instant action against Nitzberg to recover said sum of $807.60. The trial court rendered a judgment in favor of Nitzberg.

The trial court made two pertinent findings of fact as follows: "2. Between July 1, 1957, and March 17, 1967, aforesaid Patrick McCaslin at no time was licensed by the State of California as a plastering contractor, or otherwise. . . . 4. On March 23, 1964, when aforesaid plastering work was in progress, defendants paid aforesaid PATRICK MCCASLIN $807.60 pursuant to aforesaid written contract. Said contract called for partial payments to MCCASLIN as work progressed. At the time said payment was made, MCCASLIN owed his sheetrock supplier approximately $496.16 and his laborers approximately $160.00 for labor and materials supplied to and used on the job at that time. Defendants made this payment to MCCASLIN with the sincere belief that he needed this money to pay for said labor and materials supplied to the job. Defendants made this payment to avoid lien claims against their property by persons supplying labor and materials to MCCASLIN. At the time said payment was made, MCCASLIN needed said payment in order to pay his labor and material suppliers."

Based upon the findings the trial court drew the following conclusion of law: "The $807.60 payment made by defendants to PATRICK MCCASLIN on March 23, 1964, was necessary to enable said MCCASLIN to pay for labor and materials supplied to him at that time and actually used in the plastering of defendant's dwelling under construction. Defendants made said payment with the sincere and reasonable belief that it was necessary to enable MCCASLIN to pay said lien claims." No conclusion was drawn from the finding that McCaslin was not a licensed contractor and no determination was made of the issue tendered by Nitzberg's affirmative defense that

---

[2]The notice of assignment read as follows:

"NOTICE TO DEBTOR

"TO: Mr. George Nitzberg
291 Palm
Petaluma, Calif.

"TAKE NOTICE of the foregoing Assignment by Patrick McCaslin and make payment of all sums now due and owing to him, in the amount of $700.00, to the undersigned.

s/ David C. Walker
David C. Walker, Assignee
61 Jordan Street
San Rafael, California"

McCaslin was not a licensed contractor at all times mentioned in the complaint.

The judgment was reversed by the appellate department of the superior court upon the basis that Nitzberg was bound by the general rule that the rights of an assignee, including his rights in a fund to become due the assignor, cannot be destroyed by payments made by the debtor to the assignor after the notice of assignment. (*Fricker* v. *Uddo & Taormina Co.,* 48 Cal.2d 696, 701 [312 P.2d 1085]; see *Jones* v. *Martin,* 41 Cal.2d 23, 27-28 [256 P.2d 905].) In reversing the judgment the appellate department observed that Nitzberg had not sustained the burden of showing that he came within the exception to the general rule relating to assignments which is recognized in *Fricker.* That exception declares the rule that an assignment of monies to become due under an executory contract is subject to advances which are necessary to enable the assignor to perform his contract. (*Fricker* v. *Uddo & Taormina Co., supra.*) This exception is one that deals with priorities and in its application declares that, notwithstanding an assignment and notice of assignment, priority must be given to subsequent advances which are necessary to enable the assignor to perform his duties under the contract. (*Fricker* v. *Uddo & Taormina Co., supra.*) The burden is on the debtor to put into the evidence the facts required to bring the advances made by him within the exception; and to this end proof must be made of what the expenditures were so that the trier of fact can determine the question of necessity. (*Fricker* v. *Uddo & Taormina Co., supra,* at pp. 701-703.)

In making its decision, the appellate department rejected Nitzberg's contention that Walker was barred from recovering because he stood in the shoes of McCaslin who was an unlicensed contractor. The basis of this decision was twofold: that Walker was not asserting McCaslin's right to recover and that Nitzberg could not assert his payment to McCaslin as a bar to Walker's claim because Nitzberg had voluntarily made the payment to McCaslin.

In certifying the case to this court, the appellate department did so on the basis that there is a conflict of decisions with respect to the doctrine of anticipatory advances and the right of an assignee under an illegal contract to recover money owing under such contract once the obligor, with notice of the assignment, pays such money to the obligee-assignor.

■ The consideration of the first issue presented on the instant certification requires that we initially dispose of Walker's contention that the trial court improperly received evidence to the effect that McCaslin asked Mrs. Nitzberg if he could have part of the contract money "so that he could pay for the sheetrock and pay the men so that they could continue and start on the plastering, . . ." The objection to this evidence

was on the ground that the conversation was not relevant or material to an issue in the case. This objection was properly overruled. The challenged conversation was relevant and material in support of Nitzberg's affirmative defense alleging that it was necessary for him to make the payment to McCaslin in order to enable the latter to perform his contract.

■ Walker also objected on the ground that the conversation was inadmissible hearsay. This objection was proper. The conversation was hearsay in that it was offered to prove the truth of what was asserted, to wit, that the advance was in fact necessary to achieve the performance of the contract. No recognized hearsay exception appears to apply to the challenged conversation.[3] The testimony would therefore be inadmissible were it not for the fact that the hearsay objection was subsequently waived. The record discloses that the trial court, instead of sustaining or overruling Walker's objections to the conversation on the grounds of irrelevancy and hearsay, permitted Mrs. Nitzberg to testify to the conversation subject to a motion to strike. When the witness completed her answer with respect to the conversation, Walker moved to strike her testimony solely on the ground that it was not relevant or material. His neglect to make the motion on the ground of hearsay resulted in a waiver of the right to object on appeal. (*Tarpey* v. *Veith,* 22 Cal.App. 289, 294 [134 P. 367]; *Conte* v. *Busby,* 115 Cal.App. 732, 735 [2 P.2d 458]; *Estate of Wempe,* 185 Cal. 557, 564 [197 P. 949].)

■ We turn next to Walker's contention that there is no evidence to support the trial court's finding on the question of necessity. In considering this contention we observe that it was stipulated that the Nitzbergs honestly believed that the money paid to McCaslin was due for work that had been performed up to that time on the contract. The record also discloses that McCaslin told Mrs. Nitzberg that he needed the advance to pay his labor and material suppliers. This evidence was not contradicted. There is ample evidence in the record that the sum of $807.60 paid by the Nitzbergs to McCaslin was paid for materials and labor which went into the work which McCaslin agreed to perform for the Nitzbergs. The evidence is undisputed, however, that the work for which said sum was paid had already been completed when the subject payment was made. That work consisted

---

[3]Evidence Code section 1225 does not apply. Here defendant introduced the conversation to defeat plaintiff's claim. For the exception to apply, the declarant must be the "predecessor in interest" of the party against whom the conversation was introduced. This means that the two parties must have identical interests. Such is not the case here. In the context of this suit, the rights of the assignor and the assignee are mutually exclusive. Evidence Code section 1241 is not applicable, because the hearsay statement was not offered to explain, qualify, or make understandable conduct of the declarant. Evidence Code section 1250 is not applicable since declarant's state of mind is not in issue.

of installing sheetrock in the building preparatory to the plastering work. The plastering work which was included in the contract price was performed by Frank McDaniel, who was acting as a subcontractor to McCaslin. McDaniel was paid directly by the Nitzbergs for this work.[4]

In the light of the foregoing it is clear and undisputed that the portion of the contract calling for the work and materials for which said sum of $807.60 was paid had been performed at the time of said payment. This payment was not necessary for McCaslin to perform his duties under the contract since he had already performed these duties. The only work which was necessary to complete the contract was the plastering work which was performed by McDaniel whom the Nitzbergs paid directly and as part of their contract price with McCaslin in the sum of $1,385. There is no evidence that any portion of the sum of $807.60 was used or needed to pay McDaniel or that any portion of said sum was needed or used to complete the performance under the contract.

With respect to the finding that the payment of $807.60 was made to avoid lien claims against the property by persons supplying labor and materials, such finding has no foundation in the record. The only reference to a mechanic's lien was the judicial notice taken by the trial judge in the instant case of another action in the same court wherein Walker had sued Nitzberg to foreclose a materialman's lien, and in which the court found that Walker had on March 28, 1964 executed a release of lien in which he acknowledged payment for the materials furnished by Walker to McCaslin for the Nitzberg job. The record also shows that this release was delivered to Nitzberg by McDaniel on March 30, 1964 and that it was after the delivery of this release that the Nitzbergs paid McDaniel the sum of $537.

We observe, further, that the only evidence upon the question of necessity is McCaslin's statement that the money was needed to "pay for the sheet rock and pay the men so that they could continue and start on the plastering." This does not show that the money paid to McCaslin was actually used by him to pay for the materials and labor. Moreover, this statement, and the evidence that the Nitzbergs believed that the money was needed to pay for the work that had been performed, disclose only the personal opinions of McCaslin and the Nitzbergs. Such opinions were not binding upon Walker. (See *Fricker* v. *Uddo & Taormina Co., supra,* 48 Cal.2d 696, 703.)

Nitzberg suggests that the *Fricker* rule has been dissipated or weakened by the holding in *Benton* v. *Hofmann Plastering Co.* (1962) 207 Cal.App.2d

---

[4]The Nitzbergs paid McDaniel the sum of $537.

61 [24 Cal.Rptr. 268]. In considering this contention we observe that *Benton* could in no way presume to overrule or change the holding in *Fricker* because the intermediate appellate court must accept the law as declared by the Supreme Court.[5] (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We also observe that *Benton* does not cite or refer to *Fricker.*

In *Benton* the reviewing court was dealing with the respective rights of two assignees of money due under a construction contract. In holding that the assignee enjoying the superior right could settle a claim under the contract by accepting a lesser sum in settlement, the court (at p. 70) quoted from a Texas case (*Peden Iron & Steel Co.* v. *McKnight* (1910) 60 Tex. Civ.App. 45 [128 S.W. 156, 159]) as follows: "The 'anticipatory debtor may . . . do whatever reasonably appears to be necessary to enable the assignor to perform the contract.' " This statement does not appear to be at variance with the holding in *Fricker.* In fact, *Fricker* relies on *Peden* as authority for the exception to the general rule relating to assignments which *Fricker* articulates. (At p. 701.) In any event, we do not perceive any suggestions in *Benton* to the effect that the burden of showing necessity is no longer on the party claiming the exception to the general rule.

The judgment of the municipal court should have been rendered in favor of Nitzberg, however, on the basis that Walker had no right to recover on the assignment because his assignor McCaslin, at the time of his performance of the contract, did not possess a valid general contractor's license and was thus barred from recovering for the work.

Business and Professions Code section 7031, in pertinent part, provides that "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, . . ." This disability attaches to the contractor's assignee to whom the contractor's right to compensation has been assigned where the assignee is not a holder in due course. (*Shields* v. *Shoaff,* 116 Cal.App.2d 306, 309 [253 P.2d 1002]; see *Appel* v. *Morford,* 62 Cal.App.2d 36, 39 [144 P.2d 95]; *C. I. T. Corp.* v. *Breckenridge,* 63 Cal.App.2d 198, 199-200 [46 P.2d 271].)

In *Shields,* it is stated that in order for an assignee to recover he must allege and prove that the contractor had a valid contractor's license

---

[5]We observe that in *Benton* no petition was filed for a hearing by the Supreme Court.

during the performance of the contract. (116 Cal.App.2d at p. 309.) As a general proposition it would seem that this is a proper rule since an assignee who steps in the shoes of the assignor ought to be subjected to the same disability which attached to the assignor's demand. (See *Benson* v. *Andrews,* 166 Cal.App.2d 44, 54 [332 P.2d 698].) In some cases, however, the assignee cannot make this allegation or proof because the contractor was not licensed during the performance of the contract, yet at the time of the assignment the assignee was a holder in due course or a purchaser in good faith for value without knowledge that the contractor was not licensed. In such cases, in view of the disability which attached to his assignor, the assignee should affirmatively prove the facts which relieve him from the taint of such disability.

In the instant case Walker did not allege or prove that McCaslin was licensed during the performance of the contract, nor did he allege or prove that he was a holder in due course or that he took the assignment in good faith without knowledge of the infirmity which attached to the contract assigned. With respect to the allegations of the complaint, the failure to make these allegations did not, however, deprive the court of jurisdiction to try the action.  As observed in *Stephens* v. *Baker & Baker,* 150 Cal.App.2d 558, 560-561 [310 P.2d 73], Business and Professions Code section 7031 does not require the contractor (and by the same token his assignee) to be a better pleader than other litigants, and that the failure to plead the requirements of the statute can be waived.  Here such pleading was waived by Nitzberg's failure to attack the deficiency by an appropriate pleading.

Nitzberg did affirmatively allege in his answer, however, that Walker's assignor McCaslin was not a duly licensed contractor and thus tendered in issue the disability which attached to the contract between Nitzberg and McCaslin. The evidence adduced on this issue was uncontradicted that McCaslin did not have a contractor's license. McCaslin, therefore, could not maintain any action in this state for the collection of compensation for the performance of the contract. (Bus. & Prof. Code, § 7031; *Culbertson* v. *Cizek,* 225 Cal.App.2d 451, 473 [37 Cal.Rptr. 548]; *Jackson* v. *Pancake,* 266 Cal.App.2d 307, 309-310 [72 Cal.Rptr. 111]; *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 151-153 [308 P.2d 713.) The duty then devolved upon Walker, as McCaslin's assignee, to prove that he was a holder in due course or that he made a good faith purchase of the contract. (See *Appel* v. *Morford, supra,* 62 Cal.App.2d 36, 40-41.) Under this duty it was incumbent upon Walker to show that at the time he took the assignment he had no knowledge that McCaslin was an unlicensed contractor during its performance. No such proof was proffered by Walker. He, there-

fore, did not meet the requirement of proof on that issue. Accordingly, in view of the trial court's finding that McCaslin was not licensed, Walker, not being a holder in due course or a good faith assignee, could not recover because McCaslin did not, at the time of the performance of the contract, possess a valid general contractor's license as required by law. (See *Shields* v. *Shoaff, supra,* 116 Cal.App.2d 306, 309; *Benson* v. *Andrews, supra,* 166 Cal.App.2d 44, 54.)

We are persuaded that the burden imposed upon such an assignee is consistent with the strong public policy behind the contractor's license law which was enacted for the protection of the public against dishonesty and incompetency. (See *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, 151; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628, 632 [204 P.2d 37].) If such a burden was not imposed upon the assignee of a contractor, the provisions of the contractor's license law could be easily evaded. An unlicensed contractor could overcome the disability which attached to him by the mere making of an assignment of the contract upon which he himself could not recover. Nor do we believe it within the spirit of the contractor's license law to hold that an assignee of such a contract may establish a prima facie case by merely proving the assignment and thereby thrust upon the obligor the burden of establishing that the assignee did not act in good faith.

The appellate department's determination that Nitzberg could not urge the infirmity in McCaslin's contract against Walker because McCaslin had already been paid is misplaced. The reviewing court applied the rule that where an unlicensed person performs a contract for agreed services, and the person benefited voluntarily pays for such services, the latter cannot recover back the sum paid. (See *Comet Theatre Enterprises* v. *Cartwright,* 195 F.2d 80, 81.) This rule, however, does not, for the reasons hereinabove indicated, preclude the person so paying from defending on the ground of illegality against a claim for payment by a third person, such as an assignee whose claim is subject to the infirmities of such illegality. Insofar as such an assignee is concerned, he has no more right to be paid than the assignor who himself cannot bring an action to enforce payment. When the obligor pays a contractor on an illegal contract, the payment is purely gratuitous and does not result from a legal obligation. (*Comet Theatre Enterprises* v. *Cartwright, supra.*)

In view of the finding that McCaslin was an unlicensed contractor and the failure of Walker to allege and prove that in taking the assignment he acted in good faith and did not know that McCaslin was unlicensed, the determination that Nitzberg was not liable by reason of these circumstances was a question of law. Accordingly, although the trial court

did not make this conclusion but, rather, made a conclusion based on the exception to the rule declared in *Fricker, supra,* we may make the proper conclusion and are not bound by the conclusion made by the trial court. (See *Bennett* v. *Forrest,* 24 Cal.2d 485, 494 [150 P.2d 416]; *Gudger* v. *Manton,* 21 Cal.2d 537, 544 [134 P.2d 217] [overruled on other grounds, *Albertson* v. *Raboff,* 46 Cal.2d 375, 381 (295 P.2d 405)].) We, therefore, draw the conclusion in support of the judgment in favor of Nitzberg that Nitzberg is not liable to Walker on the basis that Walker could not enforce his assignment in the instant action because the assignment was subject to the same infirmity which would have precluded McCaslin from bringing the action, i.e., that McCaslin was an unlicensed contractor at the time of the performance of the contract between him and Nitzberg.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.